UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| v. | ) No. 4:14CR0330 RLW/TIA |
| WILLIAM HARRIS, | ) |
| Defendant. | ) |

**MEMORANDUM AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

The above matter was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(B). The Defendant filed a motion to Suppress Evidence and the Government filed a response thereto. An evidentiary hearing was held on February 12, 2015. Based upon the evidence adduced at the hearing on the suppression motions, the undersigned makes the following findings of fact and conclusions of law:

**FINDINGS OF FACT**

Kelly Smith is a police officer with the Metropolitan St. Louis Police Department. On August 14, 2013, he and his partner Jarred Thacker were on duty in the 6th District of the City of St. Louis. They were in full uniform and driving a marked police car. At 12:01 a.m. they received a radio call which directed them to investigate a report that gun shots were being fired from behind the Miami Grill at Riverview and Thekla Streets in St. Louis. In order to get to this location, they made a left turn onto Lucille Avenue which at that location is slightly more than a block from the

1

Miami Grill. As they turned left onto Lucille Avenue, they observed an individual who they later identified as the Defendant standing in front of 6034 Lucille Avenue. The Defendant looked up and observed the police officers as they were puling up to where he was located. He immediately grabbed his waist band, turned away from the officers and walked away from them in a hurried pace. In Officer Smith's experience, a person who grabs his waistband in this manner, and flees an area rapidly, possibly is concealing a firearm in his waistband. Because of this, Smith decided to attempt to interview the Defendant. As Smith exited the car, Defendant went from walking quickly toward the gangway at 6030 Lucille Avenue to breaking into a dead run. Smith gave chase ordering the Defendant to "stop" that he was a police officer. Smith chased the Defendant down the gangway and observed him exit through the backyard at Lucille Avenue. He then jumped a chain-link fence, and as soon as he did so, Smith observed him remove a firearm from his waistband and toss it on the ground in the rear of this address. He then continued running away from Smith. Smith did not retrieve the firearm at that time but continued to chase Defendant Harris. Defendant Harris jumped a second chain-link fence and so did Smith. Harris then ran across Thekla which is the adjoining street to Lucille, and was eventually arrested in a side yard on Thekla street. He was arrested by Smith's partner, Jarred Thacker who had driven his vehicle around the block and cut-off the Defendant. After Defendant was detained and other officers arrived, Thacker and Smith re-traced the Defendant's steps to the backyard where the gun had been tossed. They immediately observed, and seized the firearm. The firearm was fully loaded.

## DISCUSSION

Based on the above facts the undersigned concludes that the weapon should not be suppressed. The case now at bar, is factually and legally very similar to the case of California v.

Hodari, D., 499 U.S. 621 (1991). In Hodari, officers of the Oakland, California Police Department were patrolling a high-crime area dressed in jackets embossed with "Police" on both the front and the back. As they rounded a corner in this neighborhood they saw four or five individuals huddled around a small red car parked at the curb. When these individuals saw the officer's car approaching they panicked and ran. Hodari, D. turned down an alley and ran away from the police. One of the officers chased Hodari, D. down the alley demanding that he halt. Hodari D. however did not notice that the officer was almost on top of him until he looked around. At this point, he tossed away what appeared to be a small rock. A moment later Hodari, D. was tackled by the officers, handcuffed and placed under arrest. The rock which he discarded was found to be crack cocaine. The question before the Supreme Court was whether or not Defendant had been seized before he was tackled and detained by the police officer. In other words was he seized or placed under arrest by the show of authority that the officer made in chasing him down and calling upon him to halt. In deciding that Defendant was not under arrest at the time he threw the property down, it is stated as follows:

> "In sum, assuming that Pertoso's pursuit in the present case constitutes a 'show of authority' enjoining Hodari to halt, since Hodari did not comply with that injunction, he was not seized until he was tackled. The cocaine abandoned while he was running was, in this case, not the fruit of a seizure, and his motion to exclude evidence of it was properly denied." 499 U.S. 621, 628.

The same analysis can be made in the case now at bar. In the case now at bar, the officer already had a reasonable suspicion that the Defendant may have a firearm in his waistband because of the reaching into the waistband and the rapid walking away at the time he observed the officer. In addition, the gun was abandoned or thrown down prior to the Defendant being taken into custody or arrested. Therefore, as in Hodari, supra the firearm is not subject to suppression. In addition, it was apparent to the officer at the time the Defendant removed the gun from his waistband and threw it to the ground that the Defendant was carrying a concealed weapon and that what he had discarded

3

was a firearm. Therefore, when the Defendant was eventually detained and arrested by Tacker, there was probable case to believe that he had committed the felony crime of unlawful use of weapon. Therefore both the seizure of the firearm, and his arrest were legal. See Gerstein v. Pugh, 420 U.S. 103 (1975)and Beck v. Ohio,379 U.S. 89 (1964).

## CONCLUSION

Therefore, the undersigned finds that the evidence seized from the Defendant and the statements made by Defendant should not be suppressed.

In accordance with the Memorandum above,

It is hereby recommended that the Motion to Suppress Evidence [27] be denied.

Further, the parties are advised they have fourteen (14) days, in which to file written objections to this recommendation and determination. Failure to timely file objections may result in waiver of the right to appeal questions or fact. Thompson v. Nix, 897 F.2d 357 (8th Cir. 1990).

/s/ Terry I. Adelman
UNITED STATES MAGISTRATE JUDGE

Dated this 24th day of February, 2015.